IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MEDICAL MARKETING CONSULTANTS, LLC, a Florida limited liability company, MARTIN PRAEGER, and MARK SCHERMER, | ) ) ) ) ) ) ) | Civ. Action No.06-00274 |
|  Plaintiffs, | ) ) | Judge Donetta W. Ambrose Magistrate Judge Caiazza |
| v. | ) ) | |
| CARDIAC TELECOM CORPORATION, a Pennsylvania Corporation, and LEE EHRLICHMAN, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

This matter concerns the October 28, 2004 transfer of business assets. The transaction, which was effected by a series of related contracts, was beset by problems almost immediately. Those problems gave rise to two related lawsuits[1] and an arbitration proceeding. In this, the second of the two actions, the Plaintiffs seek specific performance under the terms of the various agreements, injunctive relief, and damages for tortious interference with contract. Here, the court addresses the

---

[1] The first case, in which the Plaintiffs seek damages for breach of contract and tortious interference with contractual relations, is captioned Health Monitoring Services of America, Inc., v. Cardiac Telecom Corp., Civ. Action No. 06-0018. The outstanding Motion to Dismiss in that case is addressed in a separate Report and Recommendation.

Defendants' pending Motion to Dismiss Counts III and IV of the
Complaint. The Court recommends that the Motion be denied as to
Count III, and granted, without prejudice, as to Count IV.

## II. <u>REPORT</u>

### A. <u>BACKGROUND</u>

The facts underlying this matter are detailed in the Report
and Recommendation (Doc. 20 ) filed in response to the Plaintiffs'
Motion to Enforce Settlement (Doc.14) in Civil Action No. 06-0018.
An abridged history is sufficient to provide context for the
court's recommended disposition of the Motion to Dismiss.

Cardiac Telecom Corporation ("CTC") and Health Monitoring
Services of America, Inc. ("HMSA") were competitors in the home
health monitoring industry. On October 28, 2004, the two entered
into a series of contracts, including a Purchase Agreement whereby
HMSA transferred to CTC medical equipment, software, and existing
accounts. At the same time, CTC and the newly formed Medical
Marketing Corporation ("MMC") executed a Sales Agreement obligating
MMC to market CTC's newly expanded line of equipment and services
through a trained sales force that had previously worked on behalf
of HMSA.[2] MMC also entered into individual brokerage contracts
with its sales representatives. These contracts contained non-
compete clauses precluding the representatives from working

---

[2]HMSA, in essence, ceased doing business following execution of the
Purchase Agreement.

2

directly for CTC or any other MMC competitor. A third agreement
made between the Plaintiffs and CTC, the Security Agreement, was
also a component of the asset transfer. As security for its
obligations under the other contracts, CTC granted MMC a lien and
security interest in the physical equipment transferred, and
agreed to keep the secured assets free from other encumbrances. A
defined portion of CTC revenue was to be placed in a secured bank
account. In the event of CTC's default under the Sales Agreement,
MMC had the right to demand that its signature be required for all
withdrawals and disbursements from this account.

In their Complaint, the Plaintiffs allege four causes of
action. In Count I, they allege that CTC violated the "anti-
solicitation" clause and other provisions of the Sales Agreement.
Count II alleges that CTC breached the Sales Agreement by
diverting sales fees owed to MMC, and by depriving MMC of sales
data essential to calculation of those fees. Count III of the
complaint alleges that the Defendants engaged in tortious
interference with the broker agreements made between MMC and its
sales representatives. In Count IV of the complaint, MMC contends
that Defendant Lee Ehrlichman (Ehrlichman") , CTC's President and
CEO, engaged in tortious interference with the Sales Agreement
made between CTC and MMC.

The Plaintiffs ask that Count III of the Complaint be
dismissed as to both Defendants because the claim for tortious
interference is, under the "gist of the action" doctrine, an

3

impermissible recasting of the contract claim set out in Count I.

## B. **THE LAW**

### 1. **The "Gist of the Action" Rule**

The "gist of the action" argument made as to Count III is virtually identical to the one made in the Defendants' Motion to Dismiss Count IV of the Amended Complaint in the related action. The court rejects that argument now for the same reasons articulated in its Report and Recommendation regarding the Motion to Dismiss in Civil Action No. 06-0018.

The gist of the action doctrine distinguishes claims sounding in contract from those sounding in tort by determining from the complaint the source of the duties allegedly breached; if the complaint alleges primarily a breach of duty created by an agreement between the parties, the action is contractual in nature, whereas if the duty breached is imposed on members of society as a matter of social policy, the action is tort-based.[3] American Guar. & Liab. Ins. Co. v. Fojanini, 90 F. Supp.2d 615, 622 (E.D. Pa. 2000). "[C]ourts have held that the doctrine bars tort claims: 1) arising solely from a contract between the

---

[3]This doctrine has yet to be considered by the Pennsylvania Supreme Court. The Pennsylvania Superior Court and several federal courts have, however, predicted that the Supreme Court would adopt the rule. *See* Retail Brand Alliance, Inc., v. Rockvale Outlet Center, LP., Civ. Action No. 06-01857, 2007 WL 403885 at *8 n.8 (E.D. PA. January 31, 2007)(collecting cases).

parties; 2) where the duties allegedly breached were created and grounded in the contract itself; 3) where the liability stems from a contract; or 4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Hart v. Arnold, 884 A.2d 316, 339-40 (Pa. Super. 2005)(citations omitted).

Unfortunately, the line between conduct that is essentially tortious and that which is rooted in the terms of a contract is not always a bright one. This case, where the Defendants' conduct is alleged to have "violat[ed] duties that are imposed by both social policies and agreements[,] requires a more nuanced differentiation than is necessary in [most] case[s]." Chemtech Int'l v. Chemical Injection Technologies, 170 Fed. Appx. 805, 809 n.1 (3d Cir. 2006)(citing eToll,Inc. v. Elias/Savion Adver.,Inc., 811 A.2d 10, 19 (Pa. Super. 2002)).

The mere existence of a contractual relationship between two parties does not preclude one party from bringing a tort claim against the other. Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001). The law does require, however, that the tort claim not be a mere restatement of the contract claim; it must be a separate and independent action capable of standing alone. Kalumetals,Inc., v. Hitachi Magnetics Corp., 21 F. Supp. 2d 510 (W.D. Pa 1998). The court is convinced that the tort claim here is sufficiently distinct from the contract claim raised in the related matter to prevent application

5

of the gist of the action rule.

For purposes of this motion, two contracts are at issue - the Sales Agreement between MMC and CTC, the breach of which is alleged in the related matter - and the brokerage contracts between MMC and its sales representatives, which are the basis for the tortious interference claims raised in Count III. Although these claims are closely related, they are not interdependent. The tortious interference claim rests on a contractual relationship between the plaintiff and third party sales representatives, not on a relationship between the Plaintiffs and the Defendants. *See* Daniel Adams Assoc., Inc., v. Rimbach Publishing Co., 519 A.2d 997, 1000 (Pa. Super. 1987)(explaining that claim for tortious interference lies only where defendant is alleged to have meddled with a contract made between the plaintiff and third party). In other words, MMC would have a claim for tortious interference with the brokerage agreements relationship even if it had never contracted with CTC.[4]

This is not a case where a plaintiff is trying to disguise a contract action as a tort claim. Accordingly, the gist of the action doctrine does not preclude the tort claims made at Count III of the Complaint, and the Motion to Dismiss on the basis of

---

[4]The distinct nature of these claims is especially important because the Defendants have purportedly terminated the Sales Agreement on the basis of fraud. On the one hand, the Defendants contend that there is no valid agreement. On the other, they argue that the Plaintiffs may not bring a tortious interference claim, because their remedy lies in an action for breach of that very agreement.

that doctrine should be denied.


2. **Count IV - Tortious Interference Claims Against Ehrlichman**

In Count IV, the Plaintiffs allege that Ehrlichman engaged in tortious interference with the Sales Agreement made between MMC and CTC. Ehrlichman argues that this claim must be dismissed in light of case law holding that a corporate officer cannot be liable for inducing the corporation to breach its own contracts. *See, e.g.*, Michelson v. Exxon Research and Engineering Co., 808 F. 2d 1005, 1007-08 (3d Cir. 1987).

The Plaintiffs recognize this rule, but argue that discovery may show that Ehrlichman's alleged tortious interference fell outside the scope of his employment. If this can be established, the claim is not barred. *See* Hughes v. Technology Licensing Consultants, Inc., 815 F. Supp. 847, 855 (W.D. Pa. 1992).[5] Nothing in the Plaintiffs' complaint as it stands, however, can be read to allege that Ehrlichman, in his dealings with MMC or its sales representatives, acted outside the scope of his employment. Accordingly, the Defendants' Motion to Dismiss Count IV of the Complaint should be granted without prejudice to the Plaintiffs' right to amend that Count to conform to their theories of

---

[5] As the court has noted, the Defendants have purportedly terminated the Sales Agreement on the basis of fraud in the inducement. Given that the Sales Agreement may be found void or to have been validly terminated, the Plaintiffs argue that they should, at a minimum, be permitted to plead Count IV in the alternative.

liability.

### III. <u>CONCLUSION</u>

For the reasons set out above, it is recommended that the Motion to Dismiss Count IV of the Amended Complaint be denied as to Count III, and granted, without prejudice, as to Count IV.


In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b) (1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, Objections to this Report and Recommendation are due by June 15, 2007. Responses to Objections are due by June 25, 2007.


May 31, 2007.



                                        <u>/S/ Francis X. Caiazza</u>
                                        Francis X. Caiazza
                                        U.S. Magistrate Judge


cc:


Counsel of Record
Via electronic mail

8